**Electronically Filed
Intermediate Court of Appeals
CAAP-16-0000319
12-JUN-2018
07:55 AM**

NO. CAAP-16-0000319

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


NATIONSTAR MORTGAGE LLC, Plaintiff-Appellee,
v.
DANIEL KALEOALOHA KANAHELE, Defendant-Appellant,
and
THE ESTATE OF MARCUS C. KANAHELE, CHILD SUPPORT
ENFORCEMENT AGENCY, STATE OF HAWAII, UNITED STATES
OF AMERICA, FIA CARD SERVICES, N.A., GLORIA KANAHELE,
PERSONAL REPRESENTATIVE OF THE ESTATE OF MARCUS C. KANAHELE,
Defendants-Appellees,
and
DOES 1-20, inclusive, Defendants


APPEAL FROM THE CIRCUIT COURT OF THE SECOND CIRCUIT
(CIVIL NO. 14-1-0584(2))


MEMORANDUM OPINION
(By: Fujise, Presiding Judge, Leonard and Reifurth, JJ.)

Defendant-Appellant Daniel Kaleoaloha Kanahele

(**Kanahele**) appeals from the Judgment entered on March 14, 2016,

in the Circuit Court of the Second Circuit (**Circuit Court**),[1] in

favor or Plaintiff-Appellee Nationstar Mortgage LLC (**Nationstar**),

and against all defendants (**Judgment on Foreclosure Decree**).

Kanahele also challenges the following:  (1) the Circuit Court's

March 14, 2016 Findings of Fact, Conclusions of Law; Order

_____

[1]     The Honorable Peter T. Cahill presided.

Granting Plaintiff's Renewed Motion for Summary Judgment and for Interlocutory Decree of Foreclosure (**Foreclosure Decree**); (2) its January 7, 2016 Order Denying Kanahele's Motion to Compel Plaintiff to Answer Interrogatories and to Confirm Matters Admitted or Direct Plaintiff to Otherwise Comply with Rule 36(a) (**Order Denying Motion to Compel**); and (3) its March 14, 2016 Order Denying Kanahele's Motion for Summary Judgment.

I.   BACKGROUND

On October 7, 2014 Nationstar filed a Verified Complaint to Foreclose Mortgage (**Complaint**).  In the Complaint, Nationstar alleged that on December 4, 2006, Kanahele delivered to Lehman Brothers, FSB (**Lehman**) a promissory note dated December 4, 2006 (**Note**), in the amount of $625,000.00, which was secured by a mortgage in favor of Mortgage Electronic Registration Systems, Inc. (**MERS**), solely as nominee for Lehman, on the subject property (**Property**).  Nationstar alleged that it is the current holder of the Note by virtue of the blank indorsement on the Note and that Nationstar is in possession of the Note indorsed-in-blank.  The Complaint further alleged that the subject mortgage was assigned to Aurora Loan Services, LLC (**Aurora**), and then further assigned to Nationstar, pursuant to duly-recorded assignments.

With the Complaint, Nationstar submitted a Verification to Foreclosure Complaint executed under penalty of perjury by Jesslyn Williams (**Williams**), Assistant Secretary of Nationstar, averring, *inter alia*, (a) that she personally reviewed the documents and records in Nationstar's possession relating to this

2

case for factual accuracy, including the Complaint and the attached Note, (b) that such records and files are kept by Nationstar in the ordinary course of business, and were made at or near the time of such acts, and (c) that Nationstar is in possession of the original Note and that it is indorsed-in-blank. The verified copy of the Note attached to the Complaint contained two indorsement stamps on the third and final page - an undated special indorsement executed by Lehman to Lehman Brothers Holding (**Lehman Holding**) and an undated blank indorsement executed by Lehman Holding.[2]

Filed contemporaneously with the Complaint was an attorney affirmation executed by counsel for Nationstar pursuant to Hawaii Revised Statutes (**HRS**) § 667-17 affirming that counsel had verified the accuracy of the documents. Kanahele filed his Answer to the Complaint on July 22, 2015, raising numerous defenses including that: Nationstar lacked standing, Nationstar is not entitled to enforce the Note, Nationstar is not the holder

---

[2] These stamps read as follows:

Pay To The Order Of
Lehman Brothers Holding Inc
Without Recourse
Lehman Brothers Bank, FSB
By: [signature]
E. Todd Whittemore
Vice President

PAY TO THE ORDER OF

WITHOUT RECOURSE
LEHMAN BROTHERS HOLDINGS INC.
BY: [signature]
PAUL E. SVEEN
AUTHORIZED SIGNATORY

of the Note in due course, fraud, deceptive and unfair trade practices, unconscionability, and mistake.

On March 30, 2015, Nationstar filed a motion for summary judgment which was supported by, *inter alia*, a declaration executed under penalty of perjury by Demetrice Person (**Person**), a Document Execution Specialist for Nationstar, which mirrors the Williams verification. In other words, Person also averred, *inter alia*, that (a) she personally reviewed the documents and records in Nationstar's possession relating to this case for factual accuracy, including the Complaint and "the original wet-ink [Note]," (b) such records and files are kept by Nationstar in the ordinary course of business, and were made at or near the time of such acts, and (c) Nationstar "is in possession of the original Note" and that it is indorsed-in-blank. The attached copy of the Note is the same as the copy attached to the Complaint with the same indorsements as in footnote two above. On July 7, 2015, Kanahele filed a memorandum in opposition asserting that certain paragraphs of the Person declaration were inadmissible under, *inter alia*, Hawai'i Rules of Evidence (**HRE**) Rule 803(b)(6), and raising similar arguments as are made on appeal. Thereafter, on July 16, 2015, Nationstar withdrew this motion.

On August 31, 2015, Kanahele served Nationstar with a request for discovery, to which Nationstar responded on September 30, 2015. On October 26, 2015, Kanahele filed a "Motion to Compel Plaintiff to Answer to Interrogatories and to Confirm Matters Admitted or Direct Plaintiff to Otherwise Comply with

[HRCP] Rule 36(a)" (**Motion to Compel**) asserting that Nationstar provided "evasive and incomplete answers" and refused to answer some of his discovery requests. At the December 16, 2015 hearing, the Circuit Court orally denied the motion, stating that many of Kanahele's requests sought irrelevant information[3] and found that "the answers that have been provided are appropriate and reasonable responses to the way the questions and interrogatories and the admissions were asked." On January 7, 2016, the Circuit Court entered the Order Denying Motion to Compel.

On December 15, 2015, Nationstar filed a Renewed Motion for Summary Judgment and for Interlocutory Decree of Foreclosure (**Renewed Motion for Summary Judgment**). The motion was supported by, *inter alia*, a declaration by Toni Vincent (**Vincent**), a Document Execution Specialist for Nationstar, averring under penalty of perjury that, *inter alia*, (a) she personally reviewed the records in Nationstar's possession as to this case including "a current copy of the original Note," which was indorsed-in-blank and attached thereto, (b) that such records and files were incorporated and kept in the ordinary course of business and she had verified them for accuracy, and (c) that "the Note was in the

---

[3]  Specifically, the Circuit Court stated, "[a] lot of the discovery requests, I don't even see why they're relevant" and "[a] lot of your admissions and requests do not pertain to the issues that are currently in this case, nor are they designed to lead to the discovery of admissible evidence."

possession of and has been maintained by Nationstar since before the commencement of this case."[4]  Vincent further averred that

---

[4]     Vincent's declaration more fully provides in relevant part:

2.     I have access to and am familiar with Nationstar's books and records regarding the Loan, including Nationstar's servicing records and copies of the applicable loan documents.  I am familiar with the manner in which Nationstar maintains its books and records, including computer records relating to the servicing of the Loan. Nationstar's records are made at or near the time of the occurrence of the matters set forth in such records, by an employee or representative with knowledge of the acts or events recorded.  Such records are obtained, kept and maintained by Nationstar in the regular course of Nationstar's business.  Nationstar relies on such records in the ordinary course of its business.

3.     The Loan has been serviced by Nationstar since July 01, 2012.  Prior to that the Loan was serviced by prior lender(s) and/or servicer(s) ("Prior Lenders/Servicers").  I have received training on, understand the process of, and have knowledge of Nationstar's practice of acquiring loans from other financial institutions and how these loans are transferred into Nationstar's system of record.  The information regarding the Loan transferred to Nationstar from the Prior Lender/Servicers has been validated in many ways, including, but not limited to, going through a due diligence phase, testing, reviewing reports/data, and obtaining hard copy documents.  It is Nationstar's regular practice, after these phases are complete, to receive records from prior servicers and integrate these records into Nationstar's business records at the time of acquisition.  Once integrated, Nationstar maintains and relies on these business records in the ordinary course of its mortgage loan servicing business.  Based on these standard processes, Nationstar has confirmed that prior records for the Loan received from the Prior Lenders/Servicers are accurate and have been incorporated into Nationstar's business records for the Loan.

4.     . . . . The Note contains a blank indorsement on page 3.  My personal knowledge of these statements is derived from my having inspected a copy of the Note maintained by Nationstar.  A true and correct copy of the Note that I inspected is attached hereto as **Exhibit A**.

5.     The original indorsed in blank Note has been sent to Nationstar's counsel in this action so that Nationstar's counsel can produce the Note for inspection. Prior to this, the Note was in the possession of and has been maintained by Nationstar since before the commencement of this case.

. . . .

14.     Nationstar has policies and procedures in place to ensure that the contents of a declaration executed by a Nationstar employee are accurate ("Declaration Policies and Procedures"). Nationstar regularly trains all of its employees who are responsible for executing declarations on its Declaration Policies and Procedures. I complied with Nationstar's Declaration Policies and Procedures when reviewing and executing this Declaration and, as a result, I can confirm that the contents of this Declaration are

(continued...)

based on her review of Person's declaration and attached exhibits, and having conferred with Person, that Person's declaration was "inaccurate" because Person failed to follow Nationstar's policies and procedures. She explained that Person had not personally reviewed the "original wet-ink Note" and that Person had provided an outdated copy of the Note "which did not contain all of the indorsements currently set forth on the original Note." The copy of the Note attached to Vincent's declaration differs from the prior two copies of the Note. Namely, it contains three indorsement stamps on the third and final page - an undated special indorsement executed by Lehman to Lehman Holding, an undated special indorsement executed by Lehman Holding to Aurora, and an undated blank indorsement executed by Nationstar as Aurora's attorney-in-fact.[5] Later, Nationstar

---

[4](...continued)
accurate.
. . . .
    17.    In fact, Person did not review the original "wet-ink" Note. Rather, Person reviewed an outdated copy of the Note which did not contain all of the indorsements currently set forth on the original Note.
    18.    Also, the copy of the Note included as Exhibit A to the MSJ Declaration was not a true and correct copy of the original Note. . . . .
    19.    My personal knowledge of these statements is derived from my having inspected a copy of the MSJ Declaration, the Exhibits thereto, a current copy of the original Note, and my having conferred with Person regarding this matter.

[5]    These indorsement stamps read:

Pay To The Order Of
Lehman Brothers Holding Inc
Without Recourse
Lehman Brothers Bank, FSB
By: [signature]
E. Todd Whittemore
Vice President

PAY TO THE ORDER OF

(continued...)

submitted a February 10, 2016 declaration of counsel which attached portions of (1) a June 12, 2012 "Amended and Restated Residential Servicing Asset Purchase Agreement" between Aurora and Nationstar (**Service Agreement**), and (2) a limited power of attorney executed by Aurora on June 26, 2012, in favor of Nationstar (**Limited Power of Attorney**).

On January 26, 2016, Kanahele filed a memorandum in opposition to the Renewed Motion for Summary Judgment, raising similar arguments as are made on appeal.  His memorandum was supported by his own declaration "under penalty of law" where he declared, in summary, as follows.  He and his brother, Marcus Kanahele (**Marcus**) inherited the subject property in 2002 when their father died.[6]  In 2006, Marcus, who apparently lived in Florida at the time, told Kanahele that he needed help to pay for business expenses and they "agreed to investigate the possibility of refinancing the loans against the property."  He averred that they decided to use "a mortgage broker with Maui Mortgage

---

[5](...continued)
```
                 AURORA LOAN SERVICES LLC
WITHOUT RECOURSE
LEHMAN BROTHERS HOLDINGS INC.
BY: [signature]
PAUL E. SVEEN
AUTHORIZED SIGNATORY

Pay to the Order of

Without Recourse
Aurora Loan Services LLC by Nationstar
Mortgage LLC Its Attorney-In-Fact
By: [signature]
Assistant Secretary
Julie Martinez
```
(Formatting altered).

[6]     Per the warranty deed, Marcus and Daniel were tenants in common of the property.

Professionals." The broker represented that "because [Kanahele] was the owner occupant we qualified for a loan without having to provide any documentation regarding assets or income at a rate of approximately 6.6%." He stated that he "took approximately $25,000 of the money to pay off credit card debt and the rest of the money was withdrawn for Marcus," that "[m]ost of the debt of the loan was for Marcus," that they paid their "fair share" of the debt on the house, and that in 2008, Marcus filed for bankruptcy. Marcus died in 2013. Kanahele stated, "[i]t was only when the litigation began in this case did I learn that I was the only borrower - that my brother never signed the note. As the mortgage stated us as 'co-borrowers' on the signature lines of the mortgage, I had no idea that my brother was not a co-borrower." He also attested, "I would never have agreed to the loan had I known that I was the sole borrower and that I would have been responsible for any 'deficiency judgment'". Kanahele makes no statement in his declaration that the mortgage broker was affiliated with Lehman.

Kanahele also attested that in August, 2012, he "made a debt and servicing rights validation request to [Nationstar] through our former attorney," that on August 30, 2012, Nationstar "provided a copy of the Note with two indorsements" - one from Lehman to Lehman Holdings, and one from Lehman Holdings to

Aurora, and that a "true and correct copy of the Note we received" was attached as an exhibit and incorporated therein.[7]

At a February 3, 2016 hearing, Kanahele took issue with the differing indorsement stamps on different copies of the Note in the record, stating, "we have these three notes and which one is the right note?  Maybe Aurora Loan Services is the one who should be bringing the foreclosure action against me and not Nationstar."  Kanahele also argued, "There are conflicting affidavits that create a genuine issue of material fact as to whether the plaintiff has a note that they can enforce. . . . The latest affidavit plaintiff has submitted in their renewed motion for summary judgment regarding the note undermines the credibility of the other affidavit submitted earlier with the complaint."  Kanahele asserted, "The new affidavit or declarant creates a genuine issue of material fact because here is an employee of Nationstar saying that the previous custodian of records didn't know what she was doing and that there was a problem with their record keeping.  So how do we know that now this is the valid note?"

---

[7]    These indorsement stamps read:

Pay To The Order Of
Lehman Brothers Holding Inc
Without Recourse
Lehman Brothers Bank, FSB
By: [signature]
E. Todd Whittemore
Vice President

PAY TO THE ORDER OF
          AURORA LOAN SERVICES LLC
WITHOUT RECOURSE
LEHMAN BROTHERS HOLDINGS INC.
BY: [signature]
PAUL E. SVEEN
AUTHORIZED SIGNATORY

On January 6, 2016, Kanahele filed his motion for summary judgment arguing that Nationstar had not refuted Kanahele's affirmative defenses. As to admissibility of Nationstar's evidence, Kanahele argued that Nationstar had not "produced admissible evidence establishing elements of a remedy of foreclosure," but made no further argument.

On March 14, 2016, the Circuit Court entered the Order Denying Kanahele's Motion for Summary Judgment, the Foreclosure Decree, and a Judgment on the Foreclosure Decree. On April 5, 2016, Kanahele timely filed a notice of appeal.

II. POINTS OF ERROR

Kanahele raises seven points of error on appeal, contending that the Circuit Court erred in: (1) denying his October 26, 2015 Motion to Compel "where conflicting affidavits and evidence concerning the ownership of the Note were raised by Nationstar's own evidence;" (2) "treating Nationstar as a holder in due course where such status was neither properly pled nor proven;" (3) "failing to conclude Nationstar's indorsement to itself as Aurora Loan's 'attorney in fact' was an abuse of its [limited power of attorney];" (4) granting Nationstar's December 15, 2015 Renewed Motion for Summary Judgment because Nationstar failed to meet its burden of proving the absence of any genuine issues of material fact; (5) by granting Nationstar's December 15, 2015 Renewed Motion for Summary Judgment "despite Nationstar's failure to substantively respond to [Kanahele's] affirmative defenses;" (6) denying Kanahele's January 6, 2016 motion for summary judgment; and (7) "failing to weigh the

equities of the parties in granting an interlocutory decree of foreclosure under an interpretation of the doctrine of laches."

III. APPLICABLE STANDARDS OF REVIEW

"The appellate court reviews a circuit court's grant or denial of summary judgment de novo." Anastasi v. Fid. Nat. Title Ins. Co., 137 Hawai'i 104, 112, 366 P.3d 160, 168 (2016) (brackets and internal quotation marks omitted) (quoting Bremer v. Weeks, 104 Hawai'i 43, 51, 85 P.3d 150, 158 (2004)).

> Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together, with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. A fact is material if proof of that fact would have the effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties. The evidence must be viewed in the light most favorable to the non-moving party. In other words, we must view all of the evidence and the inferences drawn therefrom, in the light most favorable to the party opposing the motion.

Id. (brackets omitted) (quoting Blaisdell v. Dep't of Pub. Safety, 119 Hawai'i 275, 282, 196 P.3d 277, 284 (2008)).

> Where a plaintiff-moving party has satisfied its obligation of showing, *prima facie*, that there is no genuine issue of material fact and the plaintiff is entitled to a judgment as a matter of law, the burden shifts to the defendant-non-moving party to produce materials regarding any affirmative defenses that have been raised *pro forma* in the pleadings. If the defense produces material in support of an affirmative defense, the plaintiff is then "*obligated* to disprove an affirmative defense in moving for summary judgment."

Ocwen Fed. Bank, FSB v. Russell, 99 Hawai'i 173, 183, 53 P.3d 312, 322 (App. 2002) (citations and internal brackets omitted) (first citing GECC Fin. Corp. v. Jaffarian, 79 Hawai'i 516, 526, 904 P.2d 530, 540 (App. 1995) (Acoba, J., concurring), concurring opinion adopted by the Hawai'i Supreme Court in GECC Fin. Corp. v. Jaffarian, 80 Hawai'i 118, 119, 905 P.2d 624, 625 (1995); then quoting Jaffarian, 79 Hawai'i at 526, 904 P.2d at 540).

The Hawai'i Supreme Court has held:

> The Hawai'i Rules of Civil Procedure (HRCP) reflect a basic philosophy that a party to a civil action should be entitled to the disclosure of all relevant information in the possession of another person prior to trial, unless the information is privileged. However, the extent to which discovery is permitted under Rule 26 is subject to considerable latitude and the discretion of the trial court. Thus, the exercise of such discretion will not be disturbed in the absence of a clear abuse of discretion that results in substantial prejudice to a party. Accordingly, the applicable standard of review on a trial court's ruling on a motion to compel discovery, brought pursuant to HRCP Rule 26, is abuse of discretion.

Anastasi, 137 Hawai'i at 111, 366 P.3d at 167 (quoting Hac v. Univ. of Hawai'i, 102 Hawai'i 92, 100-01, 73 P.3d 46, 54-55 (2003)). "An abuse of discretion occurs when the trial court has clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of a party litigant." Hac, 102 Hawai'i at 101, 73 P.3d at 55 (internal quotation marks omitted) (quoting Davis v. Wholesale Motors, Inc., 86 Hawai'i 405, 418, 949 P.2d 1026, 1039 (App. 1998)).

IV.  DISCUSSION

As it is preliminary to the parties' other arguments, we begin with Kanahele's assertion that Nationstar "was unable to establish the Note was admissible as a 'record of regularly conducted activity'" under HRE Rule 803(b)(6) because "its sources of information or other circumstances indicate lack of trustworthiness."

> In order for a record to be admissible under HRE Rule 803(b)(6), the proponent must establish a sufficient foundation. Specifically,
> > [t]he proponent must establish (1) that the record evidences "acts, events, conditions, opinions, or diagnoses"; (2) that the record was made in the course of a regularly conducted activity; and (3) that the record was made "at or near the time" of the acts or events that are recorded.

> Furthermore, "[t]he record must also survive the discretionary untrustworthiness exclusion of the rule."
> The necessary foundation can be established "by the testimony of the custodian or other qualified witness, or by certification that complies with rule 902(11) or a statute permitting certification...."

State v. Fitzwater, 122 Hawaiʻi 354, 365, 227 P.3d 520, 531 (2010) (citations omitted) (first quoting HRE Manual § 803-3[5][B]; then quoting HRE Rule 803(b)(6)). Kanahele argues that "[i]nconsistences between copies of the Note introduced by Nationstar and Nationstar's inability to account for its 2012 statement that Wells Fargo owned the Note demonstrated a lack of trustworthiness."

Regarding trustworthiness, the commentary on HRE Rule 803(b)(6) provides in pertinent part:

> [T]he hallmark of reliability in this area is not the nature of the business or activity but rather its "regularity and continuity which produce habits of precision, [the] actual experience of business in relying upon [the records], [and the] duty to make an accurate record as part of a continuing job or occupation." A further safeguard is that preliminary determination of the trustworthiness of such records is discretionary with the court.

HRE Rule 803(b)(6) cmt. (quoting Fed. R. Evid. 803(6), Advisory Committee's Note).

Here, Vincent declared that Nationstar validated the information regarding the loan by "going through a due diligence phase, testing, reviewing reports/data, and obtaining hard copy documents." She attested to Nationstar's regular practice of receiving and integrating such records into Nationstar's business records and relying on them to service mortgage loans, and that she complied with Nationstar's policies and procedures to verify the accuracy of the statements in her declaration. Person's "inaccurate" declaration bears on Person's credibility, not

necessarily on the reliability of the record-keeping system itself or the accuracy of the substance of Nationstar's business records, which is the focus of this foundational requirement.

We conclude that Vincent provided sufficient foundation to establish the trustworthiness of Nationstar's business records.

Other foundational requirements of HRE Rule 803(b)(6) are addressed in the supreme court's recent decisions in U.S. Bank, N.A. v. Mattos, 140 Hawai'i 26, 29, 398 P.3d 615, 618 (2017) and Wells Fargo Bank, N.A. v. Behrendt, 142 Hawai'i 37, 40, 414 P.3d 89, 92 (2018). In both of these cases, the supreme court considered whether declarations by the foreclosing bank's loan-service providers established sufficient foundation to admit the foreclosing bank's loan documents, including the subject note, in order to satisfy the standing requirements established in Bank of America, N.A. v. Reyes-Toledo, 139 Hawai'i 361, 367-70, 390 P.3d 1248, 1254-57 (2017).

In U.S. Bank, N.A. v. Mattos, 140 Hawai'i at 29, 398 P.3d at 618, summary judgment was granted in favor of the foreclosing bank, U.S. Bank. On appeal, the supreme court addressed whether relevant loan documents had been properly admitted through the declaration of an individual named Richard Work (Work), as records of regularly conducted activity under HRE Rule 803(b)(6). Id. at 28, 30-33, 398 P.3d at 617, 619-22. In his declaration, Work attested, *inter alia*, that he was a "Contract Management Coordinator" of OCWEN Loan Servicing, LLC (Ocwen), the "servicer" for U.S. Bank on the subject loan. Id.

at 30-31, 398 P.3d at 619-20. Because Work did not attest that he was the custodian of records for either U.S. Bank or Ocwen, the supreme court noted that "the documents attached to his declaration are admissible under the HRE 803(b)(6) hearsay exception only if he is a 'qualified witness' with respect to those documents." Id. at 32, 398 P.3d at 621. The supreme court applied its analysis in Fitzwater, 122 Hawai'i at 365-66, 227 P.3d at 531-32, and ruled as follows:

> To the extent the ICA ruled that Work's declaration established him as a "qualified witness" with respect to Ocwen's records, we agree. To the extent the ICA opinion concluded that Work met the requirements to be a "qualified witness" with respect to U.S. Bank's records, however, we disagree. Fitzwater addresses situations in which one business receives documents created by another business and includes them in its own records. Work's declaration does not indicate that U.S. Bank's Records were received by Ocwen and incorporated into the Ocwen Records. Work's declaration also does not establish that Work is familiar with the record-keeping system of U.S. Bank. Rather, Work merely states that he has access to and is familiar with U.S. Bank's records. Thus Work's declaration does not satisfy foundational requirements to make him a "qualified witness" for U.S. Bank's records pursuant to Fitzwater.

Id. at 32-33, 398 P.3d at 621-622.

In light of its prior ruling in Bank of America, N.A. v. Reyes-Toledo, 139 Hawai'i 361, 390 P.3d 1248 (2017), the supreme court in Mattos further held that:

> [s]ince [an] allonge was apparently used to specifically indorse the note to U.S. Bank, admissible evidence was needed to demonstrate that U.S. Bank was in possession of the note and allonge at the time of the filing of this foreclosure complaint for U.S. Bank to be entitled to summary judgment.

Id. at 33, 398 P.3d at 622. The supreme court noted that Work's declaration did not attest that U.S. Bank possessed the original note and allonge when the foreclosure complaint was filed. Id. The supreme court thus ruled that "Work's declaration failed to

meet U.S. Bank's burden of establishing facts necessary for a grant of summary judgment." Id.

In Behrendt, 142 Hawai'i at 40, 414 P.3d at 92, another judicial foreclosure case, summary judgment was granted in favor of the foreclosing bank, Wells Fargo. Wells Fargo had attached a copy of the subject note to its unverified complaint together with an allonge indorsing the note in blank. Id. at 39-40, 414 P.3d at 91-92. The supreme court reviewed the admissibility of these documents under HRE Rule 803(b)(6) through a similar declaration as in Mattos[8] attached to Wells Fargo's motion for summary judgment. Id. at 44-46, 414 P.3d at 96-98. This declaration was made by Vanessa Lewis (**Lewis**), who was also a "contract management coordinator" for Ocwen, Wells Fargo's loan-service provider. Id. Because Lewis did not attest that she was the custodian of record for either Wells Fargo or Ocwen, the supreme court again observed that the documents attached to her declaration were admissible under HRE Rule 803(b)(6) only if her declaration demonstrated that she was a "qualified witness." Id. at 45, 414 P.3d at 97 (citing Mattos, 140 Hawai'i at 32, 398 P.3d at 621). The supreme court stated the rule regarding necessary qualifications to admit incorporated records under Mattos and Fitzwater as follows:

> The court in Mattos held that a witness may be qualified to provide the testimony required by HRE Rule 803(b)(6) even if the witness is not employed by the business that created the document or lacks direct, personal knowledge of how the document was created. "There is no requirement that the records have been prepared by the entity that has custody of them, as long as they were

---

[8] The Behrendt court observed that the Lewis and Work declarations were "nearly identical." Behrendt, 142 Hawai'i at 45, 414 P.3d at 97.

> created in the regular course of some entity's business."
> The witness, however, must have enough familiarity with the
> record-keeping system of the business that created the
> record to explain how the record was generated in the
> ordinary course of business.
>    Records received from another business and
> incorporated into the receiving business' records may in
> some circumstances be regarded as "created" by the receiving
> business. Incorporated records are admissible under HRE Rule
> 803(b)(6) when a custodian or qualified witness testifies
> that the documents were incorporated and kept in the normal
> course of business, that the incorporating business
> typically relies upon the accuracy of the contents of the
> documents, and the circumstances otherwise indicate the
> trustworthiness of the document.

Id. (citations omitted; emphasis added) (citing and quoting

Mattos, 140 Hawai'i at 32, 398 P.3d at 621).

In holding that Lewis was not a "qualified witness"

under its decision in Mattos, the Behrendt court stated:

> Here, as in Mattos, the Lewis Declaration does not
> establish that the loan documents were received by Ocwen and
> then incorporated into Ocwen's records. In addition,
> although Lewis averred that Ocwen's records relating to the
> loan were made and maintained in the regular course of
> Ocwen's business, Lewis asserted only that she had "access
> to and [was] familiar" with Wells Fargo's records and
> documents relating to this case. The Lewis Declaration does
> not establish that Lewis was familiar with Wells Fargo's
> record-keeping system. It also makes no assertions as to
> Lewis's familiarity with the record-keeping systems of
> Funding Group or Option One, which first created the Note
> and allonges. Thus, the Lewis Declaration satisfies the
> foundational requirements to make Lewis a qualified witness
> only with respect to Ocwen's original records about the loan
> and not any records of Wells Fargo or the loan documents
> themselves.
>    The Lewis Declaration also refers only to the Note and
> not the allonges that Wells Fargo asserts were used to
> endorse the Note in blank. As noted, the Lewis Declaration
> does not establish that Lewis was a qualified witness, and
> thus she could not have satisfied the requirements of HRE
> Rule 803(b)(6) with respect to the allonges. But, as with
> the declaration in Mattos, the Lewis Declaration did not
> attempt to admit the allonges under the business records
> exception. Thus, even if the Note fell within the bounds of
> HRE Rule 803(b)(6), the allonges endorsing it in blank did
> not because the declaration did not provide the requisite
> foundation. This is to say that the documents purporting to
> allow Wells Fargo to enforce the Note were not admissible
> under the business record exception. Since the documents
> were not admissible as asserted, Wells Fargo did not meet
> its burden of establishing facts necessary for a grant of
> summary judgment.

Id. at 46, 414 P.3d at 98 (citations omitted).

Here, unlike in <u>Mattos</u> and <u>Behrendt</u>, the Vincent declaration establishes that Nationstar (1) received the loan documents, including the Note, from prior loan servicers and incorporated them into its records; and (2) that once integrated Nationstar "relie[d] on these business records in the ordinary course of its mortgage loan servicing business." And as stated above, Vincent provided additional facts sufficient to establish the trustworthiness of the documents attached to her declaration.

Kanahele asserts that "Nationstar's conflicting presentation of Notes, ownership history, and failures to respond to discovery raised genuine issues of material fact as to its credibility," and "the credibility of Nationstar's record-keeping system and its affiants." Kanahele points to "Nationstar's inconsistent versions of the Note, declaration of mistake via Toni Vincent, [and] failure to address Nationstar's ownership," and cites generally to the Vincent declaration, Nationstar's discovery responses, and an August 27, 2012 letter from a Nationstar employee to Kanahele's former counsel.

This court has held that summary judgment is improper where the non-moving party "point[s] to some facts which refute the proof of the movant in some material portion[.]" <u>Costa v. Able Distributors, Inc.</u>, 3 Haw. App. 486, 489, 653 P.2d 101, 104 (1982). The non-moving party may "not merely recite the incantation, 'Credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof." <u>Id.</u> (citation omitted). "A fact is material if proof of that fact would have the effect of establishing or refuting one of the essential

elements of a cause of action or defense asserted by the parties." Anastasi, 137 Hawai'i at 112, 366 P.3d at 168 (citation omitted).

Here, Nationstar reported to the parties and the court that the Person declaration was incorrect and submitted the Vincent declaration to correct those misstatements. Nationstar is not relying on the Person declaration to establish any element of its claim. The August 27, 2012 letter Kanahele refers to is a letter from Nationstar to Kanahele's former counsel which states that "the current owner of the loan is Wells Fargo." The issue here is whether Nationstar was the holder at the time of the filing of the Complaint, not the identity of the owner two years prior. Therefore, we are not persuaded that there is a genuine issue of material fact based solely on the credibility of Nationstar's declarants.

Nevertheless, in order to establish a right to foreclose, the foreclosing plaintiff must prove that it has standing, or entitlement to enforce the subject note, at the time the action was commenced. Reyes-Toledo, 139 Hawai'i at 367-70, 390 P.3d at 1254-57.

> In order to prove entitlement to foreclose, the foreclosing party must demonstrate that all conditions precedent to foreclose under the note and mortgage are satisfied and that all steps required by statute have been strictly complied with. See 55 Am. Jur. 2d Mortgages § 575 (Nov. 2016 Update). This typically requires the plaintiff to prove the existence of an agreement, the terms of the agreement, a default by the mortgagor under the terms of the agreement, and giving of the cancellation notice. See Bank of Honolulu, N.A. v. Anderson, 3 Haw. App. 545, 551,654 P.2d 1370, 1375 (1982) (citing 55 Am. Jur. 2d Mortgages § 554 (1971)). A foreclosing plaintiff must also prove its entitlement to enforce the note and mortgage.

Id. at 367, 390 P.3d at 1254 (further citations omitted). In Reyes-Toledo, the Hawai'i Supreme Court held that although the foreclosing bank produced evidence that it possessed the blank-indorsed note at the time it moved for summary judgment, a genuine issue of material fact existed as to whether the bank possessed the note, or was a holder of the note, at the time it brought the foreclosure proceeding. Id. at 370-71, 390 P.3d at 1257-58.

Here, in support of its Renewed Motion for Summary Judgment, Nationstar relied on, *inter alia*, (1) the Vincent declaration and (2) a copy of the Note that Nationstar had indorsed-in-blank on behalf of Aurora.[9] Like in Reyes-Toledo, the copy of the Note attached to the Vincent declaration and the Renewed Motion for Summary Judgment does not reflect the date of the blank indorsement and the Vincent declaration, which was made after the filing of the Complaint in this case, does not reflect the date of the blank indorsement. Although Vincent declared that "the Note was in the possession of and has been maintained by Nationstar since before the commencement of this case," she did not attest that the Note was indorsed-in-blank prior to the

---

[9]     Nationstar also relied on the following:  (3) a copy of the Mortgage; (4) a copy of a Corporate Assignment of Mortgage recorded in the Bureau of Conveyances on September 1, 2009, indicating that MERS as nominee for Lehman and "its successors and assigns," assigned the Note and Mortgage to Aurora for $10.00 and "other good and valuable consideration[;]" (5) a copy of an Assignment of Mortgage record in the Bureau of Conveyances on September 20, 2012, indicating that effective July 1, 2012, Aurora assigned the Mortgage "together with all interest secured thereby, all liens, and any rights due or to become due thereon" to Nationstar "for good and valuable consideration[;]" (6) a June 15, 2009 letter of default from Aurora to Kanahele; and (7) a series of ledgers indicating that Kanahele stopped making payments in November, 2008.  Filed contemporaneously with the Complaint was (8) an attorney affirmation executed by counsel for Nationstar affirming that counsel had verified the accuracy of the documents attached to the Complaint in compliance with HRS § 667-17.

commencement of this case or that the copy attached reflects the indorsements as they existed when the Complaint was filed. Indeed, she states that her personal knowledge is based on having inspected, *inter alia*, "a current copy of the original Note[.]"

Arguably, the Williams verification and attached Note indorsed-in-blank from Lehman Holding, which were filed with the Complaint, could satisfy Reyes-Toledo. However, in this case, Kanahele put forth evidence that the Note was specially indorsed to Aurora prior to the filing of the Complaint and thereby creating a material question of fact as to whether Nationstar was the holder of the Note indorsed-in-blank when the proceedings commenced. Specifically, in Kanahele's declaration in support of his memorandum in opposition to the Renewed Motion for Summary Judgment, Kanahele attested that on August 30, 2012, Nationstar sent him a copy of the Note that contained two indorsement stamps: a specific indorsement from Lehman to Lehman Holding and an undated, specific indorsement from Lehman Holding to Aurora, a copy of which was attached thereto. Viewing this evidence in the light most favorable to Kanahele, it appears that the Note was specially indorsed to Aurora prior to the filing of the Complaint on October 7, 2014. This has two implications: (1) that Nationstar could not have been the holder of the Note via a blank indorsement executed by Lehman Holding at the time it filed the Complaint, as declared by Person and Williams, and (2) that either (a) at some point after August 30, 2012, Nationstar indorsed the Note in blank on behalf of Aurora, or (b) the copy sent to Kanahele on August 30, 2012, itself was outdated and

Nationstar had since indorsed the original Note in blank on behalf of Aurora.

In any case, Nationstar did not submit evidence that the final indorsement in blank occurred <u>prior to</u> the filing of the Complaint. Although Vincent declared that "the Note was in the possession of and has been maintained by Nationstar since before the commencement of this case," the crucial inquiry here includes not only whether Nationstar was in possession, but also <u>when</u> Nationstar executed the final blank indorsement, making it the holder of the Note. Plainly stated, based on this evidence, it is possible that when Nationstar filed the Complaint, the original Note (although in Nationstar's possession) was nonetheless still specially indorsed to Aurora and Nationstar had yet to execute the blank indorsement on Aurora's behalf. Until Nationstar did so, it was not the holder of the Note.

Viewing the facts and inferences in the light most favorable to Kanahele, as we must for purposes of a summary judgment ruling, we conclude that there is a genuine issue of material fact as to whether Nationstar was entitled to enforce the Note at the time this foreclosure action was commenced. Therefore, the Circuit Court erred in granting Nationstar's Renewed Motion for Summary Judgment. <u>See</u> <u>Reyes-Toledo</u>, 139 Hawai'i at 370-71, 390 P.3d at 1257-58.

For these reasons, the Circuit Court's March 14, 2016 Judgment on Foreclosure Decree and Foreclosure Decree are

23

vacated,[10] and this case is remanded to the Circuit Court for further proceedings consistent with this Memorandum Opinion.

DATED: Honolulu, Hawai'i, June 12, 2018.

On the briefs:

Bianca K. Isaki,
  and
Lance D. Collins,
for Defendant-Appellant.

David A. Nakashima,
Jade Lynne Ching,
Kanoelani S. Kane,
(Nakashima Ching LLC),
for Plaintiff-Appellee.

Presiding Judge

Associate Judge

Associate Judge

---

[10]     Accordingly, we need not address Kanahele's further arguments.